Case 3:14-cv-00052 Document 64 Filed in TXSD on 03/13/17 Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 14, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ROBERT RODRIGUEZ TREVINO, | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:14-CV-52 |
| | § | |
| BRAD LIVINGSTON, *et al.*, | § § | |
| Defendants. | § § § | |

## ORDER

The plaintiff, Robert Rodriguez Trevino (TDCJ #00729766), is an inmate in the custody of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ"), and he has filed this action under 42 U.S.C. § 1983, alleging deliberate indifference to serious medical needs. Trevino's sister is proceeding as next friend for him (Dkt. 26) and has retained an attorney. Trevino's original and first amended complaints dealt entirely with conduct that took place at the Jester IV Unit ("Jester"), which is in Fort Bend County, Texas (Dkt. 1 and Dkt. 15). With the Court's permission, Trevino filed a second amended complaint alleging that his Constitutional rights were further violated at TDCJ's Carole Young Medical Facility ("CYMF"), which is located in Galveston County, Texas (Dkt. 36-1). The Court severed the Jester claims and transferred those claims to the Houston Division, in which Fort Bend County lies (Dkt. 47).

The CYMF claims remain in this division. The named defendants in those claims are Leonard Echessa, Director of TDCJ Region III; David L. Callender, President of the

1

University of Texas Medical Branch ("UTMB"); Joe R. Taylor, Medical Director at CYMF; Tina Knight, Nurse Manager at CYMF; and LVN Shannon Gregory, a nurse at CYMF (Dkt. 36-1 at pp. 3–4, 9–10). The defendants have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and have invoked qualified immunity in that motion (Dkt. 59). Trevino has responded to the motion, though he has not amended his allegations against these defendants (Dkt. 63). Trevino's allegations are currently insufficient to state a claim; the Court will give him 14 days to replead.

## I. BACKGROUND

Trevino is a disabled Vietnam veteran who, according to the TDCJ website, is serving a life sentence for aggravated sexual assault. He has been diagnosed with post-traumatic stress disorder and paranoid schizophrenia (Dkt. 36-1 at p. 5). At some point—it is unclear when—Trevino was transferred from Jester to CYMF. Trevino's allegations regarding his treatment at CYMF read, in their entirety, as follows:

> During the time Mr. Trevino has resided in CYMF, his medical condition, described . . . above, has worsened. He is now basically non-ambulatory, is in diapers and his [sic] dependent on the medical staff to assist him to perform most basic facts [sic].
>
> During his time in CYMF, Mr. Trevino has suffered from improper treatment from many of the medical personnel. This treatment rises above poor medical treatment to the level of physical abuse and retaliation for his complaints to the officials at CYMF. For example, this abuse consists of dropping him, refusing to change his diapers, refusing to give him prescribed medications to relieve his chronic constipation so they won't have to change his diapers. He is taunted by the staff. They will maliciously change his diapers in the hallway or the day room, exposing his private parts to everyone, instead of moving him to his room to change him in

> private. This causes him great embarrassment and humiliation. They maliciously dropped him, again, on Veteran's Day. This is the third time he has been dropped by the medical staff since he has been Carole Young [sic], re-injuring him and causing him severe pain. Nurse Shannon Gregory violently grabbed him by the legs and pulled and twisted his back then brutally pulled the catheter from his penis cutting him because she didn't want to change him; the staff deprives him of privileges like watching TV and confine [sic] him to his room for no justifiable reason but only for in [sic] retaliation for his complaints. This constitutes an assault. He has had instances of the abuse mentioned above with Nurse Dues, Nurse Sam, Nurse Larson and others.
>
> Mr. Trevino has had grievances filed which have gone both to the TDJC [sic] and to the UTMB officers; however, these groups investigate themselves on the grievances and allege that there is no basis for the complaints. As such there is no accountability.
>
> Gloria Trevino, who has Mr. Trevino's power of attorney, of which TDJC [sic] and UTMB are aware, has also written to President Callender and Joe R. Taylor, MD, and the Business Administrator. However, rather than responding to her directly, the UTMB management has stated that these issues should be addressed in the instant lawsuit. This of course ignores the fact that, until this Second Amended Petition, the allegations in this lawsuit were against the TDCJ and the treatment that Mr. Trevino suffered in the Jester IV Unit, not the Carole Young Medical Facility nor against UTMB-Galveston. President Callender, Mr. Taylor and R.N. Tina Knight, Nurse Manager, have all received complaints from Mr. Trevino and have not acted to address his mistreatment.

Dkt. 36-1 at pp. 9–10 (paragraph numbers omitted).

In his response to the defendants' Rule 12(c) motion, Trevino insists that these allegations are sufficient to state a claim under the Eighth Amendment and to rebut the defendants' qualified immunity (Dkt. 63 at pp. 16–20).

## II.   **RULE 12(c) AND QUALIFIED IMMUNITY**

The defendants have filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The standard for dismissal under Rule 12(c) is the

3

same as that for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). A complaint can be dismissed under Rule 12(b)(6) if the factual allegations it contains, taken as true, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011). As the Fifth Circuit has further clarified:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. This includes the basic requirement that the facts plausibly establish each required element for each legal claim. However, a complaint is insufficient if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action.
> 
> *Coleman v. Sweetin*, 745 F.3d 756, 763–64 (5th Cir. 2014) (quotation marks and citations omitted).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Moreover, the defendants have invoked qualified immunity. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). Until the plaintiff meets this pleading burden, no discovery

is permitted. *Id.* ("One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive[.]").

To defeat qualified immunity, the plaintiff must first show that the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The plaintiff must then show that the Constitutional right was clearly established at the time of the violation. *Id.* For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id.* at 236–37.

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97

5

(1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993). Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

### III.  PRISONERS AND MEDICAL CARE

Trevino seeks relief under Section 1983 for violations of the Eighth Amendment's prohibition against cruel and unusual punishments, which the Fourteenth Amendment makes applicable to the states. *Hinojosa v. Livingston*, 807 F.3d 657, 664–65 (5th Cir. 2015). The non-conclusory allegations in his live pleading are far too vague to state a viable claim, much less overcome qualified immunity.

Trevino is claiming that the medical care he has received at CYMF falls below Constitutional standards. In order to obtain relief, Trevino must demonstrate "deliberate indifference to serious medical needs" on the part of the defendants. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The deliberate-indifference test has both an objective prong and a subjective one. The prisoner must first prove objective exposure to a substantial risk of serious harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir.

2006). To then prove subjective deliberate indifference to that risk, the prisoner must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).

The deliberate-indifference standard "is an extremely high standard to meet"—*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)—and it is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40. Absent exceptional circumstances, the deliberate-indifference standard is not met by an incorrect diagnosis, unsuccessful medical treatment, acts of negligence, medical malpractice, or a prisoner's disagreement with his medical treatment. *Id.*; *Gobert*, 463 F.3d at 346. Rather, the prisoner must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quotation marks omitted).

The Constitution does not require that prisoners receive optimal care, and the fact that a prisoner's medical treatment "may not have been the best that money could buy" is insufficient to establish a Constitutional claim. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) ("[The] plaintiff stated that he had not received 'optimum' or 'best' medical treatment. Were this the legal standard, a trial of the issues might be required.").

Trevino has not stated a claim under the Eighth Amendment against any of the defendants. He has only sued one person—Gregory—who was directly involved in his medical care, and his only specific claim against her is that she "brutally" removed his catheter "because she didn't want to change him" (Dkt. 36-1 at p. 10). This statement alone does not show that Trevino was objectively exposed to a substantial risk of serious harm or that Gregory drew the inference that such a risk existed; and in any event Trevino's statement of Gregory's motives is entirely conclusory. Trevino provides no factual context for this allegation, and without that context this allegation does not state a claim against Gregory or rebut her qualified immunity.[1]

---

[1] It appears that Trevino may be trying to state a claim for retaliation against Gregory. If he is, he has failed to do so. To state a claim for retaliation, an inmate must establish: (1) that he invoked a specific Constitutional right; (2) that the defendant intended to retaliate against him for his exercise of that right; (3) a particular retaliatory adverse act; and (4) that, but for the defendant's retaliatory motive, the complained-of adverse act would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson*, 110 F.3d at 310 (quotation marks omitted). Proving retaliation entails carrying a "significant burden" and presenting more than mere conclusory allegations, and the court must "carefully scrutinize" the claim "with skepticism[.]" *Woods*, 60

Trevino's allegations against the other defendants are even more unclear. Trevino seems to be trying to impose liability on the other defendants because, in their supervisory roles, they "received complaints" about his treatment. But, again, Trevino needs to be a great deal more specific. There is no vicarious or *respondeat superior* liability for supervisors under Section 1983. *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006). A supervisory official may generally be held liable under Section 1983 only if he either: (1) affirmatively participated in the acts that caused the Constitutional deprivation; or (2) implemented unconstitutional policies that causally resulted in the Constitutional deprivation. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). The plaintiff must show that the supervisor acted or failed to act with deliberate indifference to Constitutional violations committed by his subordinates. *Id.* This standard, naturally, requires a threshold showing that there *was* a Constitutional violation committed by the subordinates. *Rios*, 444 F.3d at 425. Trevino has not established either that his Constitutional rights were violated or that the supervisory defendants acted or failed to act with deliberate indifference to those Constitutional violations. His allegations are simply too sparse.

V. **PRELIMINARY INJUNCTION**

Trevino has also requested a preliminary injunction (Dkt. 36-1 at p. 11). That request is denied. In order to obtain a preliminary injunction, a party must demonstrate:

---

F.3d at 1166. The inmate must present direct evidence of motive or, barring that, allege a chronology of events from which retaliation may be plausibly inferred. *Id.* And the prisoner's allegations of causation must show more than "temporal proximity alone[.]" *Reese v. Skinner*, 322 Fed. App'x 381, 383 (5th Cir. 2009). Trevino has not met this standard with regard to any alleged retaliatory act committed by Gregory or anyone else.

(1) a substantial likelihood of success on the merits of an underlying legal claim; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that the injunction will not have an adverse effect on the public interest. *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). "A preliminary injunction is an extraordinary remedy that should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 268 (5th Cir. 2012) (quotation marks and citation omitted). Trevino has failed to carry his burden.

## VI. CONCLUSION

Based on the foregoing, the Court **ORDERS** the plaintiff to submit an amended pleading within 14 days of the entry of this order. The deadline is **March 28, 2017**. The Court will reserve ruling on the defendants' Rule 12(c) motion until it receives an amended pleading from the plaintiff.[2]

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas on ___March 13___, 2017.

*George C. Hanks*
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE

---

[2] In their submissions, the parties spend a significant amount of ink arguing about whether Trevino exhausted the administrative remedies on his various claims. The Court expresses no opinion on that matter at this time. Irrespective of whether Trevino exhausted his remedies, his live pleading is insufficient to state a claim.

10